UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) Cause No. 2:11-cr-0037 JMS-CMM | |
| v. | ) | |
| | ) | |
| CONSTANTINO CEJAS, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO MOTION TO REDUCE SENTENCE

The United States of America opposes Constantino Cejas's motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(6) (p.s.) (Nov. 1, 2023). (*See* Doc. 36, 49, 91.) This Court should deny relief principally because Cejas has not demonstrated "extraordinary and compelling" circumstances warranting that relief, despite the new policy statement he relies upon. 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13(b)(6) (p.s.).

That is so because "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction." *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021); *see also id.* at 575. The Sentencing Commission cannot confer that authority by agency rule when the statute does not provide it. Many Seventh Circuit cases, including *Thacker*, bind this Court's interpretation of the

statute—regardless of any policy statement created by agency rule.

This motion may also be denied because Cejas has not proven that he is not a danger to the community.

The United States requests that this Court first address the foundational legal question—did the Sentencing Commission have the authority to enact § 1B1.13(b)(6)? Should this Court determine that the new guideline provision is valid, the United States would then request leave to address the 18 U.S.C. § 3553(a) factors and the appropriate final sentence in this case.

I. BACKGROUND

A. Background of this Case

This Court has recounted Cejas' background before. (Doc. 243 at 2–4.) Briefly, Cejas was tried and convicted of conspiring to distribute 500 grams or more of methamphetamine and possession with intent to distribute methamphetamine, as well as of two counts of Possession of a Firearm in Furtherance of Drug Trafficking, and Possession of a Firearm by an Alien Illegally in the United States. (*See* Doc. 109.) In 2012, he was sentenced to a term of 480 months in prison because of the quantity of drugs charged, and due to the consecutive nature of the two 924(c) charges.

Cejas now invokes the newly promulgated U.S.S.G. § 1B1.13(b)(6) to claim that the First Step Act's reduction in the mandatory minimum sentence for multiple

violations of 18 U.S.C. § 924(c) should be applied to him retroactively—even though Congress expressly declined to make that provision retroactive.

Last time Cejas moved for compassionate release, this Court denied relief, explaining that Cejas's first argument—"that he would likely receive a shorter sentence if sentenced today because of changes to the law — is not an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A)(i), whether standing alone or in connection with any other factors." (Doc. 243 at 4–5 (citing *Thacker*, 4 F.4th at 571) The parties disagree about whether *Thacker* still binds this Court, in light of § 1B1.13(b)(6).

## II. ARGUMENT

### A. No authority for unusually-long-sentence rule

In § 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress then gave the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). That authority is necessarily limited by the ordinary meaning of the very words chosen by Congress—

"extraordinary and compelling." Indeed, § 994(t) does not even give the Sentencing Commission the power to define those terms—only to "describe" how they operate.[1]

To that end, the Sentencing Commission adopted an unusually-long-sentence rule, relied on here by Cejas, and it states:

> Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (p.s.); *see also* U.S.S.G. § 1B1.13(c) (p.s.).

The Sentencing Commission "was not granted unbounded discretion," and as "[b]road as" the commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). In the Sentencing Reform Act itself, Congress directed the commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any [f]ederal statute," which would necessarily include § 3582(c)(1)(A)(i). 28 U.S.C. § 994(a). Even when exercising delegated authority, an agency's

---

[1] Even when given the power to define a term, "[o]ne must be careful not to use counterintuitive definitions, as by saying that the word dog is deemed to include all horses." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232, n. 29 (2012) (quoting *Garner's Dictionary of Legal Usage* 258 (3d ed. 2011)) (brackets and italics omitted) (hereinafter "Scalia & Garner").

interpretation of a statute must be set aside if its interpretation is unreasonable. *See Mayo Foundation for Medical Education & Research v. United States*, 562 U.S. 44, 58 (2011); *Batterton v. Francis*, 432 U.S. 416, 428–429 (1977). An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Foundation*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428–429.

Stated in more obvious terms, "the [c]ommission does not have the authority to amend the statute." *See Neal v. United States*, 516 U.S. 284, 290 (1996). And the commission does not have the authority to "override" the Seventh Circuit's interpretation of a statute—specifically how it has interpreted "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i). *See id*. at 294; *see also United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017), *aff'med*, 138 S. Ct. 1783 (2018). What the Supreme Court wrote about a neighboring provision, 18 U.S.C. § 3582(c)(2), is also true of § 3582(c)(1): "[T]he Commission's policy statement cannot alter § 3582(c)(2) . . . . [P]olicy statements cannot make a defendant eligible when § 3582(c)(2) makes him ineligible." *Koons*, 138 S. Ct. at 1790 (citation omitted).

So, the Sentencing Commission cannot validly dress up something routine by describing it as extraordinary because "[r]outine is the opposite of extraordinary." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 1784

(2023).[2] But that is just what the commission did here. The Seventh Circuit has held: "When deciding whether 'extraordinary and compelling reasons' . . . justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions." *King*, 40 F.4th at 595. One reason for that holding is relevant here: "There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *Id.* (citation omitted). Indeed, sentencing "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). Treating what is "routine" as "extraordinary" is "hard to reconcile with the language of the statute." *King*, 40 F.4th at 595.

This must be so because every lawfully imposed sentence reflects the law at the time of sentencing, and any disparity caused by a change in sentencing law—

---

[2] "A fundamental rule of textual interpretation is that neither a word nor a sentence may be given a meaning that it cannot bear." *See* Scalia & Garner at 31. The "tempting fallacy" here is to take the Sentencing Commission's unusually-long-sentence rule as the only description that matters, and read the words Congress wrote—"extraordinary and compelling"—"out of the statute altogether." *See* Scalia & Garner at 231 (quoting *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 718 (1995) (Scalia, J., dissenting)); 18 U.S.C. § 3582(c)(1)(A)(i).

whether by statutory or an intervening judicial decision—merely reflects the operation of ordinary nonretroactivity principles and the ordinary process of the legal system. "[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *Thacker*, 4 F.4th at 574 (citation omitted).

That should be the end of the analysis because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 984 (2005); *see also Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536–537 (1992). Insofar as this issue is concerned—whether a valid (but long) sentence is "extraordinary" in light of non-retroactive statutory changes—the statute is unambiguous when read in context with the First Step Act. *See King*, 40 F.4th at 595–596; *Thacker*, 4 F.4th at 573; *see also United States v. Brock*, 39 F.4th 462, 464–465 (7th Cir. 2022).

If Cejas were sentenced based upon the law in 2024, his mandatory minimum sentence would be lower because of § 401(a)(1) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). As the Court is well aware, the First Step Act amended, among other things, 18 U.S.C. § 924(c), which mandates enhanced penalties for defendants who use, carry, brandish, or discharge a firearm during and in relation to any crime of violence or drug trafficking offense. At the time of Cejas's sentencing, a second conviction under Section 924(c)—even one imposed in

7

the same case as a first conviction under the statute—mandated the imposition of a minimum sentence of 20 years to run consecutive to all other sentences. *See* 18 U.S.C. § 924(c)(1) (1997) ("In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.").

Under § 401(c), Congress decided that it would not apply this change to offenders like Cejas, who had been sentenced before its enactment. *See also Dorsey*, 567 U.S. at 280; 1 U.S.C. § 109.[3] When construing § 403(b), which has language identical to § 401(c), the Seventh Circuit denied a claim similar to Cejas', explaining that "[i]nterpreting § 403 to apply retroactively would unwind and disregard Congress's clear direction that the amendment apply prospectively." *Thacker*, 4 F.4th at 573. So, the Sentencing Commission's policy statement contradicts unambiguous statutory language. Whatever "extraordinary and compelling" means, it cannot mean that § 401(c) of the First Step Act is retroactive.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. For a reason to be "compelling" under § 3582(c)(1)(A)(i), it must provide a "powerful and convincing" reason to disturb the finality of a federal sentence. *United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (citation omitted). But there is a "strong presumption against statutory

---

[3] Section 401(c) of the First Step Act states: "APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." 132 Stat. at 5221.

8

retroactivity," and it "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Id.* at 1198 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law impels that outcome. Any disparity between Cejas's sentence and the sentence he would receive today is the product of deliberate congressional design.

Given how the Seventh Circuit has interpreted the relevant statutory language, no reasonable agency interpretation of that phrase's text can encompass nonretroactive changes in law. Although the results have not been universal, many courts of appeals have already determined that § 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances.[4]

---

[4] *United States v. Andrews*, 12 F.4th 255, 260–261 (3d Cir. 2021); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. 2023) (unpub.); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *Thacker*, 4 F.4th at 571; *United States v. Crandall*, 25 F.4th 582, 585–586 (8th Cir. 2022); *Jenkins*, 50 F.4th at 1198–1200. The United States has consistently argued that those decisions are correct and that the Sentencing Commission lacks authority to expand the scope of compassionate release beyond the limits Congress has prescribed. *See* Br. in Opp. 14-18, 22, *Gashe v. United States*, 142 S. Ct. 753 (2022) (No. 20-8284); *see also* Br. in Opp. 12-17, *King v. United States*, 143 S. Ct. 1784 (2023) (No. 22-5878); Br. in Opp. 14-19, *Fraction v. United States*, 143 S. Ct.

9

Statutory context confirms our circuit's interpretation, because in the very next paragraph of § 3582(c), Congress expressly addressed the retroactive application of some changes in law. *See* 18 U.S.C. § 3582(c)(2). That Congress did not similarly provide the commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for § 3582(c)(1)(A)(i) to reach such changes. There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had § 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056 (punctuation altered).[5]

By reducing sentences based on intervening changes in the law, moreover, § 1B1.13(b)(6) undermines congressional design by supplanting the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on

---

1784 (2023) (No. 22-5859); Br. in Opp. 11-16, *Ferguson v. United States*, No. 22-1216 (filed Nov. 1, 2023).

[5] In § 1B1.13(b)(6), the commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6) (p.s.). The commission accordingly precluded courts from using compassionate release as an end-run around the commission's own determinations concerning the retroactive application of its guidelines amendments. But by permitting other changes in law, including a statutory change that Congress explicitly declined to make retroactive to qualify, the commission declined to afford the same respect to Congress's retroactivity determinations. Such a result is, generously put, counterintuitive.

their sentences" in 28 U.S.C. § 2255. *Jones v. Hendrix,* 599 U.S. 465, 473 (2023); *see also Thacker*, 4 F.4th at 574.

And purporting to empower courts to ignore Congress's retroactivity determinations in individual cases is in tension with basic separation-of-powers principles. *See Thacker*, 4 F.4th at 574. The Supreme Court observed that the commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta v. United States*, 488 U.S. 361, 396 (1989). "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372 (citation omitted), and "[w]hatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy." *Gore v. United States*, 357 U.S. 386, 393 (1958) (citation omitted). The commission did not pose a nondelegation or separation-of-powers concern precisely because Congress delegated to the commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

Indeed, the *Thacker* Court decided that Congress makes the decision about whether to make sentencing provisions retroactive. 4 F.4th at 573. And it saw "nothing preventing the next inmate serving a mandatory minimum sentence" from claiming "compassionate release on the basis that the prescribed sentence is too

11

long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like." *Id.* at 574. These are precisely the arguments Cejas makes here. But "[r]ationales along those lines cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law. Any other conclusion offends principles of separation of powers." *Id.*[6]

Allowing individual district courts to recognize intervening changes in the law as extraordinary and compelling circumstances will produce the very sort of unwarranted sentencing disparities that the Sentencing Reform Act of 1984 was designed to eliminate. *See Neal*, 516 U.S. at 290–291; *Mistretta*, 488 U.S. at 365–366. Individual judges will inevitably have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively. Whether a sentence lawfully imposed under a prior regime is "unusually long," whether to apply a change in law retroactively produces a "gross disparity," and whether a particular sentence presents a "gross disparity," are subjective issues that would divide many reasonable judges. It is doubtful "that the [Sentencing Reform Act]—which effected a profound shift from indeterminate to determinate

---

[6] Because the commission did not have the authority to enact this policy statement, whether the rule is binding (or whether the commission may eliminate a circuit conflict), is irrelevant because of that antecedent issue. (*See* Doc. 91 at 13–17.) The commission, of course, has the authority to eliminate any number of circuit conflicts. But not this one—at least, not in this way.

12

sentencing—contained the[ ] seeds of its own destruction." *Jenkins*, 50 F.4th at 1202. And there is no basis to think that Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy." *Crandall*, 25 F.4th at 586.

The Supreme Court has not hesitated to reject the Sentencing Commission's purported interpretation of a statute where it is inconsistent with plain statutory language. *E.g. Koons*, 138 S. Ct. at 1790. In *Neal*, as another example, the Court held that guidelines commentary addressing the method for calculating the weight of LSD could not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount," used in 21 U.S.C. § 841(b). *Neal*, 516 U.S. at 287–290 (discussing *Chapman v. United States*, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the commission intended to "displace" the Court's prior interpretation of § 841(b), the Court nevertheless explained that if the commentary was intended to do so, the commission's action "cannot be squared" with precedent. *Id.* at 293–294. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 295 (citations omitted).

For these reasons, the commission's policy statement, § 1B1.13(b)(6), is unreasonable and therefore invalid. *See Mayo Foundation*, 562 U.S. at 58. Therefore, Cejas' compassionate-release motion should be denied.

**B. Defendant's Status as a Non-U.S. Citizen Does Not Justify Compassionate Release**

Defendant alternatively argues that his status as an illegal immigrant expose him to unfair treatment by the BOP, which also justifies his release. Dkt. 259, p. 5. However, being a non-U.S. citizen is not extraordinary. To the contrary, roughly one quarter of federal inmates are not United States citizens. *Profile of Prison Inmates, 2016 (Dec. 2021)*, U.S. Dep't of Justice Bureau of Justice Statistics, https://bjs.ojp.gov/content/pub/pdf/ppi16.pdf. Further, Cejas' own submission demonstrates that he does, indeed, have access to programing of all types, including a current work detail in Plumbing. Dkt. 259-1, pp. 20-21.

**C. Cejas cannot prove that he presents no danger**

If this Court releases Cejas and he returns to selling narcotics, then he would present a danger to the community. *See* U.S.S.G § 1B1.13(a)(2) (p.s.). Cejas has not proven that he has changed his ways and will not fall back into old habits; his conduct pertaining to this offense demonstrates a profound disrespect for the law. Making matters worse, his lack of remorse during the sentencing hearing does not suggest he has accepted responsibility for his actions and begun the process of rehabilitation. *See* Dkt. 142, p. 4.

The chances of Cejas dealing drugs again are exacerbated here, where he will be deported and unable to be supervised by a probation officer. Because he will be deported, no home detention or GPS monitoring is available. *See United States v. Black*, No. 111CR00083TWPMJD, 2020 WL 4583056 at *4 (S.D. Ind. 2020). The chance that he will illegally reenter the United States and return to Indianapolis, instead of staying in a country where he has not lived for decades, is significant.

Cejas' post-incarceration plans are vague, at best. He plans to return to Mexico (no further detail provided—e.g., where in Mexico, with whom in Mexico, etc…), and claims to have employment in Mexico (again, with no further detail provided). Dkt. 259-1, p. 17.

The efficacy of Cejas' release plan matters because a good plan would decrease his risk of reoffending, while a poor one would increase his risk. This one is vague, unsupported by independent evidence, and suggests that he will reside beyond the supervision of this Court. He is a danger if released, despite his low risk-recidivism score and the other evidence supporting his position.

WHEREFORE the United States respectfully prays that this Court deny the defendant's motion for a sentence reduction.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By: s/ Michelle P. Brady
Michelle P. Brady
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2024, a copy of the foregoing United States's Response in Opposition to Defendant's *Pro Se* Motion for a Reduction of Sentence was filed electronically. Notice of this filing was mailed, by First-Class Mail, postage prepaid and properly addressed to the following:

    Constantino Cejas
    Registration Number 10061-028
    FCI Hazelton
    Federal Correctional Institution
    PO Box 5000
    Bruceton Mills, WV 26625

                                              s/ Michelle P. Brady
                                              Michelle P. Brady
                                              Assistant United States Attorney
                                              Office of the United States Attorney
                                              10 West Market Street, Suite 2100
                                              Indianapolis, Indiana 46204
                                              Telephone: (317) 226-6333
                                              E-mail: Michelle.Brady@usdoj.gov